UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CAROL LARAWAY,

       Plaintiff,

v.                                                    Case No. 1:06-CV-608

AMERITECH SICKNESS & ACCIDENT         HON. GORDON J. QUIST
DISABILITY BENEFIT PLAN,

       Defendant.
_____/

**OPINION**

Plaintiff, Carol Laraway ("Laraway"), has sued Defendant, Ameritech Sickness & Accident Disability Benefit Plan ("Plan"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461, for review of the Plan's decision to discontinue paying disability benefits to Laraway.  Presently before the Court is the Plan's motion for entry of judgment pursuant to the procedure set forth in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), for determining ERISA denial of benefits claims.  Laraway has not responded to the motion, nor has she filed her own cross motion for judgment.  For the reasons set forth below, the Court will grant the Plan's motion and enter judgment affirming its decision to discontinue benefits.

**Facts**

Laraway was employed by Ameritech as a Service Representative, a sedentary position involving talking on the phone and entering data into a computer.  During Laraway's employment, Ameritech maintained the Plan to provide short and long-term disability benefits to eligible

employees, such as Laraway. Laraway left work on August 19, 2004, claiming that she was suffering from depression and that this condition prevented her from working. Laraway had fallen asleep on the job on previous occasions and apparently had been on various medications, including stimulants, for depression. However, at the time she left work, she was not under any work restrictions by a health care provider.

Laraway applied for disability benefits based upon her depression and her diagnosis of psoriasis. Her claim was approved from August 26, 2004, through February 28, 2005. Laraway saw Susan deGroot, a clinical social worker, for her depression approximately nine times between September 22, 2004, and February 28, 2005. In addition, Laraway saw Dr. Curt Cunningham, her attending psychiatrist, for approximately five visits between January and October 2004. With regard to her psoriasis, Laraway was treated by Dermatology Associates of West Michigan from September 2004 through November 2004.

On March 10, 2005, the Plan informed Laraway in writing that, based upon its review of the medical records provided by Ms. deGroot, it had determined that Laraway was not eligible for benefits under the Plan. The letter stated:

> Our determination is based on a review of medical documentation provided by Sue DeGroot, LCSW on February 25, 2005. You were seen by Ms. DeGroot on February 28, 2005 due to depression and were treated with counseling. The [SBC Medical Absence & Accommodations Resource Team] Physician Advisor reviewed the medical information and further discussed your condition with Ms. DeGroot, however, Ms. DeGroot was not able to provide additional medical information that would substantiate severity.
>
> Although the clinical information provided supports that your condition may warrant treatment, it does not contact [sic] clear medical indicators to support a severely disabling condition and your inability to perform your occupation as a Service Representative from March 1, 2005 through return to work.

(Letter of 3/10/05 from Pickering to deGroot, Administrative Record ("AR") at 000175-76.)  The following day, Plaintiff was informed that she would be required to return to work by March 18, 2005, or she would be deemed to have abandoned her position.  On March 14, 2005, Laraway sent a letter to the Plan requesting an appeal of the decision to deny her benefits.  Laraway stated that she had uncontrolled high blood pressure as a result of her medications, that she had psoriatic arthritis, and that she was seeing a psychologist.  On the same date, Ms. deGroot sent a letter to the Plan's Quality Review Unit confirming this information but stating that Laraway might be able to return to work on a part-time basis.

      The Plan arranged for Dr. Robert G. Slack, a Diplomat of the American Board of Psychology and Neurology and an Associate Professor of Clinical Psychiatry of the University of Illinois College of Medicine, to review the medical information regarding Laraway's depression.  Dr. Slack noted that Laraway had seen Ms. deGroot on approximately nine occasions between September 22, 2004, and February 28, 2005, and that the progress notes of those visits contained minimal mental status abnormalities.  Dr. Slack also noted the absence of any support in the progress notes for the severity of observed mental status changes reported by Ms. deGroot in the forms that she submitted to the Plan.  He also wrote that Dr. Cunningham's mental status findings were essentially normal.  Dr. Slack concluded that "there is no psychiatric hospitalization, no psychosis, no delirium/dementia and no suicidal/homicidal behavior" and that there is no evidence that Laraway could not perform the essential functions of her job due to a psychiatric disorder.  (Slack 4/27/05 Report, AR at 128-31.)

      The Plan also arranged for Dr. Gary Markewich, a Board Certified Dermatologist, to review the information regarding Laraway's psoriasis.  Dr. Markewich noted that the medical records covered the period from September 14, 2004, through November 10, 2004.  He also noted that while

3

a separate sheet stated that Laraway was still receiving light therapy three times per week as of February 1, 2005, there was no clinical evaluation or medical history of her condition. He concluded that "[f]rom a dermatologic standpoint and based on the information available for review, Ms. Laraway was not disabled from her regular job as of 03/01/05 through 03/17/05." (Markewich 4/27/05 Report, AR at 000121.) Dr. Markewich further wrote: "There are no records indicating severity of condition that would necessitate Ms. Laraway's disability. She does not have a job that requires significant physical activity, as her job is described as sedentary. She would not be working in any kind of extreme environment that would affect her psoriasis." (*Id.* at 000122.)

On April 27, 2005, the Plan's Quality Review Unit sent Laraway a letter notifying her that her appeal had been denied. The letter referenced the Plan's reliance upon the opinions of Drs. Slack and Markewich. The letter stated: "Although some findings are referenced, none are documented to be so severe as to prevent you from performing the job duties of Service Representative with or without reasonable accommodation from March 1, 2005 through March 17, 2005." (Letter of 4/27/05 from Molina to Laraway, AR at 000123-24.) Thereafter, Laraway filed the instant action.

## Discussion

**I.      Standard of Review**

A threshold issue the Court must decide is the standard of review that applies to the Plan's decision to deny benefits. A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). The *de novo* standard of review applies to both the factual

determinations and legal conclusions of the plan administrator. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

Where the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the determination is reviewed under the "arbitrary and capricious" standard. *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991). The arbitrary and capricious standard "'is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)); *see also Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (noting that administrators' decisions "are not arbitrary and capricious if they are 'rational in light of the plan's provisions'") (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). In applying this standard, the Court must defer to the administrator's interpretation when the plan vests the administrator with discretion to interpret the plan; an administrator's determination will be overturned only upon a showing of internal inconsistency in the plan or bad faith. *Davis*, 887 F.2d at 695. While no particular language is necessary to vest the plan administrator with discretion to interpret the plan or make benefit determinations, the Sixth Circuit "has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'" *Perez*, 150 F.3d at 555 (quoting *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1993) (italics and alteration in original)). Moreover, a court may not "merely . . . rubber stamp the administrator's decision," but must actually

"exercise [its] review powers." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).

The Summary Plan Description for the Plan contains that following language:

> The Plan Administrator, the Claims Administrator and each person to whom review authority has been delegated shall have full and exclusive authority and discretion to grant and deny claims and appeals under the Program. The decision of the Plan Administrator, Claims Administrator or any delegate, as applicable, on any claim or appeal, in accordance with the claim and appeal procedures, shall be final and conclusive and shall not be subject to further review.

(Summary Plan Description at 26-27.) Laraway does not dispute that this language is a clear grant of discretion to the Plan to make benefit eligibility determinations, and the Court concludes that this language is sufficient under the law to support application of the more deferential arbitrary and capricious standard to the Plan's decision.

Although Laraway has not responded to the Plan's motion, prior to the filing of the Plan's motion, she filed a brief regarding the applicable standard of review, in which she argued that review under the more stringent *de novo* standard is appropriate because the Plan failed to file a copy of the Plan document or the Summary Plan Description on October 12, 2006, when it filed the administrative record in this case. Laraway further argued that to the extent that the Court allowed the Plan additional time to file the requisite Plan documents, it should award Laraway sanctions and attorney fees for the time and expense of preparing her motion and/or brief. The Plan responded in its brief regarding the applicable standard of review, noting its oversight in not filing the Plan document. It argued that it had corrected the oversight by filing the Summary Plan Description on January 17, 2007. It further noted that the Summary Plan Description contained the requisite grant of authority to invoke the arbitrary and capricious standard, that Laraway was not prejudiced by the

6

failure to file the Plan document, and that, in any event, the authority that Laraway cited in support of her request for *de novo* review and/or attorney fees and sanctions did not support Laraway's request.

The Court agrees with the Plan that, regardless of any error by the Plan in not filing the Plan document with the administrative record, Laraway has not been prejudiced by the failure to file. It appears that Laraway's counsel never contacted the Plan's counsel to request a copy of the Plan or the Summary Plan Description for purposes of filing the brief on the proper standard of review. Because the Plan subsequently corrected this error, Laraway cannot claim prejudice because the Court now has the applicable document before it. In addition, the case Laraway cites as support for her request, *Ruth v. Comcast Corp.*, No. 3:04-CV-332, 2006 WL 2792179 (S.D. Ohio Sept. 26, 2006), is inapposite. In that case, the entire administrative record was missing. Thus, the entire administrative record had to be recreated, and the defendant agreed that the plaintiff was entitled to benefits for the period of time during recreation of the record and an award of attorney's fees for the plaintiff's efforts in filing the complaint. *See id.* at *1. Here, at most, the Plan was tardy in filing the Plan document, and nothing had to be recreated. Accordingly, the Court rejects Laraway's argument and request.

## II. Denial of Benefits

Based upon its review of the evidence in the administrative record, the Court concludes that the Plan's decision to deny benefits to Laraway was supported by substantial evidence and based upon a reasoned explanation. In reaching its decision, the Plan relied upon the opinions of Dr. Slack and Dr. Markewich, both of whom concluded that there was no evidence to sustain a finding that Laraway could not perform the duties of her sedentary job. Drs. Slack and Markewich were both

qualified to opine on their respective areas of review, and nothing in their reports suggests that their opinions were inconsistent with other medical information in the record.  Having failed to respond to the Plan's motion, Laraway has provided no reason for this Court to conclude that the Plan's decision was arbitrary and capricious.  Accordingly, the Court will affirm the decision.

### Conclusion

For the foregoing reasons, judgment will be entered in favor of the Plan.

An Order and Judgment consistent with this Opinion will be entered.

Date:  August 10, 2007  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE